Filed 11/12/13  CRV Imperial-Worthington v. KB Home Coastal CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| CRV IMPERIAL-WORTHINGTON, LP, | D062261 |
| Cross-complainant and Respondent, | |
| v. | (Super. Ct. No. 37-2011-00083091-CU-CO-CTL) |
| KB HOME COASTAL, INC., | |
| Cross-defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Luis R. Vargas, Judge.  Reversed and remanded with directions.

Naumann Law Firm and William H. Naumann, Monnett De La Torre for Cross-complainant and Respondent.

Newmeyer & Dillion, John E. Bowerbank, Paul L. Tetzloff, C. Kendie Schlecht, Lily N. Toubi, for Cross-defendant and Appellant.

Appellant KB Home Coastal, Inc. (KB) appeals from an order denying its special motion to strike the cross-complaint of respondent CRV Imperial-Worthington, LP (CRV) as a strategic lawsuit against public participation. (Code Civ. Proc.,[1] § 425.16, commonly known as the anti-SLAPP statute.) CRV's cross-complaint alleged that KB, by suing CRV for indemnity and other causes of action, had breached a written settlement agreement between CRV and KB containing a broad mutual release of certain claims.

On appeal, KB contends its motion should have been granted and CRV's cross-complaint stricken because (1) it satisfied its burden to show CRV's cause of action was based upon KB's petitioning activity, putting it under the ambit of the anti-SLAPP statute and (2) CRV failed to produce admissible evidence to support its cause of action for breach of contract and therefore did not meet its burden of establishing a probability of prevailing on the merits of that claim. We agree that CRV has not met its burden to establish a probability of prevailing on the merits of its breach of contract cross-complaint, and therefore reverse.

FACTUAL AND PROCEDURAL BACKGROUND

The facts are taken from CRV's cross-complaint for breach of written contract, as well as the evidence presented by the parties in connection with KB's anti-SLAPP motion.

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise indicated.

In February 2006, KB entered into a purchase agreement with CRV for the purchase of residential lots within a two-phase subdivision project (at times, the Monterrey Park project) in the city of Imperial (City). Under the purchase agreement, KB purchased the lots in phase 1; KB was granted the option to acquire the lots within phase 2; KB agreed to take over the subdivision mapping process with City for both phases; KB agreed to install all City-mandated infrastructure improvements on both phases; and KB agreed to obtain all City-required security improvement bonds.

In conjunction with the purchase agreement, KB and CRV entered into a construction license agreement giving KB the right to enter the phase 2 lots to construct infrastructure improvements before acquiring them from CRV. As a condition precedent to the grant of the license, KB was to obtain all agreements and authorizations required by any governmental agency for its use of CRV's property. City required KB and also CRV, because CRV was still a title holder, to enter into a subdivision improvement agreement for the construction of certain improvements relating to both phases of the project. The subdivision improvement agreement provides that CRV and KB are jointly and severally responsible for complying with the agreement's provisions, however, KB alone provided the security for performance of the agreement by obtaining a bond.

KB hired a contractor, TC Construction, to complete the improvements under the subdivision improvement agreement. KB and TC Construction, however, ended up in a dispute over payment, resulting in TC Construction filing a mechanic's lien on the title to the phase 2 lots and instituting litigation against both KB and CRV.

3

In October 2009, in an effort to resolve that dispute and remove the contractor's mechanic's lien, KB and CRV entered into a settlement agreement and mutual release of all claims (the settlement agreement), in which KB granted a release and waiver of all claims against CRV and its agents "relating to or arising from . . . any claim or demand relating to" the purchase agreement and the construction license agreement. As consideration for the release, CRV paid to KB $442,400 in funds that KB had deposited into a "holdback" account. The settlement agreement provides in part: "[I]t is the intention of CRV and KB hereto to settle and dispose of, fully and completely, any and all of their respective claims, demands and cause or causes of action, or litigation relating to the same, relating to (1) the Purchase Agreement between the parties; (2) the Construction License Agreement between the parties, and/or (3) the litigation instituted by TC Construction." It further provides: "This Agreement affects the settlement of the claims which are denied and contested . . . . KB, for its part, and CRV, for its part, denies any liability in connection with any of the claims, and in entering into this Agreement, intends only to avoid further litigation and to buy their respective peace in regards to the relationship between them as it relates to the Monterrey Park project and all agreements and contracts relating thereto."

After KB defaulted under the subdivision improvement agreement, City filed an action against KB and another party for breach of that agreement and recovery on the bonds. Thereafter, KB cross-complained against CRV and others seeking indemnity and other relief, and eventually, in November 2011, filed its second amended cross-complaint for unjust enrichment, implied indemnity, contribution, reimbursement, declaratory relief,

4

and breach of the implied covenant of good faith and fair dealing. In part, KB alleged that it and CRV were jointly and severally responsible for complying with the subdivision improvement agreement's terms as joint subdividers of the Monterrey Park project, and that, if KB were found liable for the improvement work at phase 2 of the project, CRV should pay for the work. KB also alleged CRV, via the October 2009 settlement agreement, released KB from any further obligation to construct improvements under the purchase agreement, and could not compel KB to pay for or complete those improvements.

CRV in turn cross-complained against KB for breach of the written settlement agreement, alleging in part that the claims and demands in KB's cross-complaint related to and arose from their purchase agreement and the construction license agreement. Eventually, CRV filed a first amended answer to KB's second-amended indemnity cross-complaint, including an affirmative defense of settlement and release.

KB moved to strike CRV's cross-complaint under section 425.16. It argued CRV's breach of contract cross-complaint and its alleged damages arose solely from KB's filing of its indemnity cross-complaint. It argued CRV could not establish a probability of prevailing on the merits of its cross-complaint because the actions underlying CRV's pleading (KB's filing of its own indemnity cross-complaint) came squarely within the absolute litigation privilege of Civil Code section 47, subdivision (b). According to KB, CRV's cross-complaint was filed in retaliation against KB for KB's filing of its own lawsuit. KB further argued CRV's claim that KB had breached the settlement agreement was an affirmative defense that CRV had the burden to prove; it maintained CRV's cross-

5

complaint was unnecessary and a waste of judicial resources.  Finally, KB argued it did not give CRV a broad release as to any claims by third parties, such as City, relating to the subdivision project; that its release was strictly limited to claims by TC Construction.

In opposition, CRV argued that the fact its action was filed after KB's petitioning activity did not mean it arose from that activity; according to CRV, its cross-complaint was based on the terms of the parties' October 2009 settlement agreement, which included a general release as well as a waiver of Civil Code section 1542.  KB's indemnity cross-complaint, CRV argued, was merely evidence that KB did not comply with the settlement agreement.  CRV maintained KB had waived the right to section 425.16 protections by entering into the settlement agreement.  As for CRV's ability to demonstrate a probability of prevailing on its breach of contract cause of action, it submitted the declaration of Thomas Dobron, at the time CRV's general partner and one of its limited partners.  Dobron asserted in part that CRV had "done all of the significant things that the settlement agreement required it to do and/or it was excused from having to do those things" due to KB's breach, and "all conditions required for KB to perform under the settlement agreement have occurred."  (Some capitalization omitted.)  CRV further argued the Civil Code section 47, subdivision (b) litigation privilege did not apply to its breach of contract action.

The trial court tentatively granted KB's motion, ruling CRV's cross-complaint arose entirely out of petitioning activity and statements made in the course of judicial proceedings, and CRV did not show a probability of prevailing on the merits of its action against KB.  Granting KB's request for judicial notice, the court ruled CRV's cross-

6

complaint was unnecessary as it had pleaded an affirmative defense of settlement agreement and release in its first amended answer to KB's cross-complaint, and had moved for summary judgment on that defense.

Following oral argument, the court denied KB's motion. Though it did not change its conclusion that CRV's action arose out of KB's petitioning activity, it ruled CRV established a probability of prevailing on the merits of its cross-complaint. It found CRV's cross-complaint was not wholly duplicative of its affirmative defense of settlement agreement and release set forth in its first amended answer, in that it sought relief that it could not otherwise recover via its affirmative defense. It ruled CRV's claim was legally sufficient and supported by a prima facie showing of facts to sustain a favorable judgment. KB filed this appeal.

DISCUSSION

I. *Standard of Review*

Section 425.16 provides a procedural remedy to dispose of lawsuits that are brought to chill or punish a party's valid exercise of constitutional rights to free speech and to petition the government for redress of grievances. (*Personal Court Reporters, Inc. v. Rand* (2012) 205 Cal.App.4th 182, 188.)[2]

---

2      Section 425.16 specifies the type of acts included within the statute's ambit. An " 'act in furtherance of a person's right of petition or free speech . . . in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made

An evaluation of an anti-SLAPP motion involves two steps. "[T]he trial court first determines whether the defendant has made a threshold showing that the challenged cause of action arises from protected activity. [Citation.] Under . . . section 425.16 '[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech . . . shall be subject to a special motion to strike. . . .' [Citation.] 'A cause of action "arising from" defendant's litigation activity may appropriately be the subject of a section 425.16 motion to strike.' [Citation.] 'Any act' includes communicative conduct such as the filing, funding, and prosecution of a civil action. [Citation.] This includes qualifying acts committed by attorneys in representing clients in litigation. [Citations.] [¶] If the court finds the defendant has made the threshold showing, it determines then whether the plaintiff has demonstrated a probability of prevailing on the claim. [Citation.] 'In order to establish a probability of prevailing on the claim . . . , a plaintiff responding to an anti-SLAPP motion must " 'state[ ] and substantiate[ ] a legally sufficient claim.' " [Citations.] Put another way, the plaintiff "must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." ' " (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1055-1056; see also *Simpson Strong-Tie Co. v. Gore* (2010) 49 Cal.4th 12, 21;

---

in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).)

8

§ 425.16, subd. (h) [making cross-complaints subject to the anti-SLAPP statute].)  If the moving party does not satisfy the first step, the court need not address the second step, and must deny the motion to strike.  (*Aguilar v. Goldstein* (2012) 207 Cal.App.4th 1152, 1160.)

We review the trial court's order denying KB's section 425.16 motion de novo.  (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 819.)  A reviewing court will " 'independently review the record to determine whether the asserted causes of action arise from the defendant's free speech or petitioning activity, and, if so, whether the plaintiff has shown a probability of prevailing.  [Citations.]  We consider "the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based."  [Citations.]  We do not reweigh the evidence, but accept as true all evidence favorable to the plaintiff and evaluate the defendant's evidence only to determine if it has defeated the evidence submitted by the plaintiff as a matter of law.  [Citations.]  If the trial court's decision denying an anti-SLAPP motion is correct on any theory applicable to the case, we may affirm the order regardless of the correctness of the grounds on which the lower court reached its conclusion.' "  (*Personal Court Reporters, Inc. v. Rand*, *supra*, 205 Cal.App.4th at pp. 188-189; see *Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3.)

## II.  *KB's Burden*

As indicated, the trial court ruled KB met its initial burden on its anti-SLAPP motion.  In doing so, it concluded that KB's act underlying CRV's claim for breach of written agreement was the filing of its cross-complaint: an act by KB in furtherance of its

9

right of petition. (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78.) In its opening brief, KB maintains the trial court correctly reached this conclusion.

In its respondent's brief, CRV argues the trial court erred in that portion of its ruling, repeating its arguments below. In part, it argues KB's filing of its indemnity cross-complaint is only "incidental" to CRV's claim for breach of the settlement agreement; that CRV's breach of contract claim is "based on the [settlement agreement] terms and KB's obvious breach of those terms." (Emphasis omitted.) Assuming CRV is entitled to challenge this aspect of the trial court's order without itself appealing from it, we disagree.

The "principal thrust or gravamen" of CRV's cause of action determines whether section 425.16 applies. (*Martinez v. Metabolife Internat., Inc.* (2003) 113 Cal.App.4th 181, 188; accord, *Club Members for an Honest Election v. Sierra Club* (2008) 45 Cal.4th 309, 319.) In the context of the anti-SLAPP statute, the "gravamen is defined by the *acts on which liability is based*, not some philosophical thrust or legal essence of the cause of action." (*Wallace v. McCubbin* (2011) 196 Cal.App.4th 1169, 1190; see also *Castleman v. Sagaser* (2013) 216 Cal.App.4th 481, 490-491 [the focus under the first prong of section 425.16 is the "allegedly wrongful and injury-producing conduct that provides the foundation for the claims"].)

Under this test, CRV's breach of contract claim unquestionably arises directly from activity protected by section 425.16. CRV alleges KB breached the settlement agreement by filing its indemnity cross-complaint against it. "The filing of a complaint [or cross-complaint] fits the definition of an act in furtherance of a person's right of

10

petition because it is a 'written . . . statement or writing made in connection with an issue under consideration or review by a . . . judicial body.' " (*Mundy v. Lenc* (2012) 203 Cal.App.4th 1401, 1408-1409, quoting § 425.16, subd. (e)(2) & *Navellier v. Sletten* (2002) 29 Cal.4th 82, 88-89.) In *Mundy v. Lenc*, the Court of Appeal held the first prong of section 425.16 was met by a claim alleging that a party breached a settlement agreement by filing a complaint in a second action. (*Mundy v. Lenc*, at pp. 1405, 1408-1409.) In *Navellier*, the court held that the first prong of the anti-SLAPP statute was satisfied by the filing of federal counterclaims alleged to be in breach of a general release; "[a] claim for relief filed in federal district court indisputably is a 'statement or writing made before a . . . judicial proceeding.' " (*Navellier*, at p. 90; see also *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1115 [the right to petition protected under section 425.16 includes the basic act of filing litigation]; *Vivian v. Labrucherie* (2013) 214 Cal.App.4th 267, 272-273 [cause of action for breach of a settlement agreement fell within anti-SLAPP because it was based on documents submitted to a family court; Court of Appeal rejected the argument that the action was based on the fact the defendant "breached a contract that prohibits her from engaging in certain speech-related conduct"]; *Chavez v. Mendoza* (2001) 94 Cal.App.4th 1083, 1087 [holding it "well established" that the " ' " 'the basic act of filing litigation' " ' " is an exercise of a party's constitutional right of petition].)

We reject CRV's argument that KB waived anti-SLAPP protection via the settlement agreement's terms. It cites *Navellier v. Sletten*, *supra*, 29 Cal.4th 82 and *Wentland v. Wass* (2005) 126 Cal.App.4th 1484 for the proposition that "[a] defendant

11

who validly contracted not to speak or petition effectively waives the right to anti-SLAPP protection in the event he later breaches that contract."  CRV misreads *Navellier*, which expressly made the point that though a plaintiff's claim alleging a breach of an agreement not to sue will come within the anti-SLAPP statute, he or she will not automatically lose their right to assert such claim as long as the claim possesses minimal merit under the *second probability of prevailing prong* of the statute.  (*Navellier*, at p. 93.)[3]

### III.  *CRV's Burden*

We turn to whether CRV met its burden to show a probability of prevailing on the merits of its breach of contract claim.  In meeting this burden, CRV cannot rely solely on the allegations in its cross-complaint and must present evidence that would be admissible at trial.  (*Stewart v. Rolling Stone LLC* (2010) 181 Cal.App.4th 664, 679;

---

[3]     In part, the *Navellier* court stated:  "That contract and fraud claims are not categorically excluded from the operation of the anti-SLAPP statute does not mean, as plaintiffs suggest, that Sletten therefore cannot be sued for breaching his promises because his alleged breach was in filing claims in court.  In so suggesting, plaintiffs fall prey . . . to the fallacy that the anti-SLAPP statute allows a defendant to escape the consequences of wrongful conduct by asserting a spurious First Amendment defense.  [Citation.]  In fact, the statute does not bar a plaintiff from litigating an action that arises out of the defendant's free speech or petitioning [citation]; it subjects to potential dismissal only those actions in which the plaintiff cannot 'state[] and substantiate[] a legally sufficient claim' [citation].  Contrary to plaintiffs' suggestion, moreover, applying the anti-SLAPP statute to an action based, as this one is, on alleged breach of a release does not take away from the releasee the constitutional right to petition the court to redress legitimate grievances.  As our emerging anti-SLAPP jurisprudence makes plain, the statute poses no obstacle to suits that possess minimal merit.  [Citation.]  [¶]  Thus . . . the anti-SLAPP statute neither constitutes—nor enables courts to effect—any kind of 'immunity' for breach of a release or of other types of contracts affecting speech.  When a ' "complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited" ' [citation], it is not subject to being stricken as a SLAPP."  (*Navellier v. Sletten*, *supra*, 29 Cal.4th at p. 93.)

12

*ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 1010.)  However, CRV's burden is not high:  It " 'need only establish that [it's] claim has "minimal merit" [citation] to avoid being stricken as a SLAPP.' "  (*Hawran v. Hixson* (2012) 209 Cal.App.4th 256, 274, quoting *Soukup v. Law Offices of Herbert Hafif*, *supra*, 39 Cal.4th at p. 291.)  CRV will meet its burden if *any* part of its claim has merit.  (*Oasis West Realty, LLC v. Goldman*, *supra*, 51 Cal.4th at p. 820; *Mann v. Quality Old Time Service, Inc.* (2004) 120 Cal.App.4th 90, 105-106; *Burrill v. Nair* (2013) 217 Cal.App.4th 357, 379-382.)  Nevertheless, the court should grant the motion if, as a matter of law, KB's evidence supporting the motion defeats CRV's attempt to establish evidentiary support for the claim.  (*Taus v. Loftus* (2007) 40 Cal.4th 683, 714.)

To make out a prima facie case of breach of a contract, CRV must show (1) the existence of the contract; (2) CRV's performance or excuse for nonperformance; (3) KB's breach; and (4) resulting damages to CRV.  (*Oasis West Realty, LLC v. Goldman*, *supra*, 51 Cal.4th at p. 821.)  KB's appellate challenges relate only to the latter two elements; KB contends CRV did not meet its burden because it did not produce evidence of KB's breach or CRV's damages.

Specifically, with respect to the element of breach, KB argues the settlement agreement contained only a limited release in CRV's favor as to the claim of TC Construction; that the settlement agreement did not release CRV from the indemnity claims made by KB in its cross-complaint arising from other third parties including City, and thus CRV cannot show action that constitutes KB's breach of the settlement agreement.  As for the element of damages, KB maintains CRV's claimed damages, the

13

$442,400 in holdback funds given to KB, are not proper breach of contract damages, but are only available if CRV were to rescind the contract.  Though KB acknowledges the settlement agreement contains an attorney fees provision, it argues that after the enactment of Civil Code section 1717, any attorney fees incurred by CRV are not damages, but are costs of suit.

CRV responds that KB disregards the broad release provisions in the settlement agreement.  It further argues it suffered harm as a result of KB's breach by losing $442,400, and also by being forced to bring the present action.  According to CRV, the holdback funds are awardable as damages under a failure of consideration theory.[4]

A.  *Scope of KB's Release*

We begin with KB's contention that CRV presented no evidence that KB breached the settlement agreement by filing its indemnity cross-complaint.  CRV's opposition was supported by a sworn declaration from Dobron, which we accept as true, authenticating and attaching various exhibits including the purchase agreement and its amendments, the construction license agreement, and the settlement agreement.  Dobron asserted, without any contrary showing by KB, that he was directly involved in negotiating the settlement agreement, and that CRV and KB entered into it to "dispose of and settle all claims, demands and cause or causes of action, or litigation between CRV and KB related to the Monterrey Park Property . . . ."  He also asserted that as consideration for the settlement

---

4    CRV finally argues the litigation privilege does not bar its action, but as KB did not raise the Civil Code section 47, subdivision (b) litigation privilege as a bar in its opening appellate brief, we need not address that contention.

agreement and mutual release, KB received over $442,400 in holdback funds. There is no dispute that KB filed suit against CRV, which is the action alleged to have breached the settlement agreement's terms. Absent conflicting extrinsic evidence as to the parties' intent, the question of whether KB's release encompassed its indemnity lawsuit against CRV is a question of law, dependent upon the release's interpretation. (*City of Hope Nat. Medical Center v. Genentech, Inc.* (2008) 43 Cal.4th 375, 395.)

The settlement agreement sets out KB's release in various places: In the recitals section, the settlement agreement provides: "In consideration of the Mutual Release given herein by CRV, KB does hereby release, acquit and forever discharge CRV and its agents, insurance carrier, employees, officers, directors, attorneys, representatives, successors, predecessors and assigns, and each of them, of and from any and all claims, claims for damages, debts, liabilities, demands, obligations, costs, attorney's fees, expenses, compensation, action and causes of action, of every nature, character and description, whether known or unknown, which KB now owns or holds, or at any time prior to the execution of this Agreement, it has owned or held, whether known or unknown, relating to or arising from (1) the Purchase Agreement between the parties; (2) the Construction License Agreement between the parties, and/or (3) the litigation instituted by TC Construction."

Following the recitals, the settlement agreement states: "KB hereby agrees to waive and release all claims against CRV now or in the future, relating to or arising from, in any way shape or form, any claim or demand relating to (1) the Purchase Agreement between the parties; (2) the Construction License Agreement between the parties, and/or

15

(3) the claim of TC Construction arising from or relating to the Monterrey Park project, in exchange for the release of funds from the Holdback Funds, for a total distribution of Four Hundred Forty Two Thousand Four Hundred and no/100 Dollars ($442,400.00) from the escrow account currently maintained by Stewart Title."

The release contains a waiver of all rights under Civil Code section 1542, which provides in part that "CRV and KB each acknowledge that each may hereafter discover facts different from, or in addition to, those it now knows, or believes to be true, with respect to the claims, claims for damages, debts, liabilities, demands, obligations, costs, attorneys' fees, expenses, compensation, action or causes of action which are the subject of the release set forth in the action described in this Agreement, and that CRV and KB hereby expressly agree to assume the risk of the possible discovery of additional or different facts, and agree that this Agreement shall be and remain effective in all respects regardless of such additional or different facts."[5]

"A release is 'the abandonment, relinquishment or giving up of a right or claim to the person against whom it might have been demanded or enforced [citations] and its

---

[5] That paragraph of the settlement agreement begins: "The release by CRV and KB, as set forth herein, is a General Release of the claims, claims for damages, debts, liabilities, demands, obligations, costs, attorneys' fees, expenses, compensation, action and causes of action which are described herein and is intended to encompass all known or unknown, foreseen or unforeseen claims which CRV and KB may have against one another, relating to or arising from (1) the Purchase Agreement between the parties; (2) the Construction License Agreement between the parties, and/or (3) the claim of TC Construction arising from or relating to the Monterrey Park Project." Civil Code section 1542 states: "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

16

effect is to extinguish the cause of action . . . .' [Citation.] Thus, a release 'conclusively estops the parties from reviving and relitigating the claim released.' " (*In re Mission Ins. Co.* (1995) 41 Cal.App.4th 828, 838.) Settlement and release agreements are governed by the ordinary rules of contract interpretation. (*Hess v. Ford Motor Co.* (2002) 27 Cal.4th 516, 528; *Benedek v. PLC Santa Monica* (2002) 104 Cal.App.4th 1351, 1356; *Winet v. Price* (1992) 4 Cal.App.4th 1159, 1165.) " ' " 'The fundamental rules of contract interpretation are based on the premise that the interpretation of a contract must give effect to the "mutual intention" of the parties. "Under statutory rules of contract interpretation, the mutual intention of the parties at the time the contract is formed governs interpretation. [Citation.] Such intent is to be inferred, if possible, solely from the written provisions of the contract. [Citation.] The 'clear and explicit' meaning of these provisions, interpreted in their 'ordinary and popular sense,' unless 'used by the parties in a technical sense or a special meaning is given to them by usage' [citation], controls judicial interpretation." ' " ' " (*EFund Capital Partners v. Pless* (2007) 150 Cal.App.4th 1311, 1321, quoting *TRB Investments, Inc. v. Fireman's Fund Ins. Co.* (2006) 40 Cal.4th 19, 27.) The parties' undisclosed subjective intent is irrelevant to determining the meaning of contractual language. (*Winet*, at p. 1166, fn. 3.)

Since CRV did not offer conflicting extrinsic evidence as to the meaning of the settlement agreement, we construe it independently. (*Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 865-866; *Citizens for Goleta Valley v. HT Santa Barbara* (2004) 117 Cal.App.4th 1073, 1076.) Here, the critical question is whether KB's claims for indemnity and contribution against CRV, filed after City sued KB for breach of the

subdivision improvement agreement, are claims that "relat[e] to or aris[e] from" either KB and CRV's purchase agreement or their construction license agreement. The language "relating to or arising from" is very broad. (See *Morales v. Trans World Airlines, Inc.* (1992) 504 U.S. 374, 383-384 [the "ordinary meaning of ['relating to'] is a broad one—'to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with' "]; *Bono v. David* (2007) 147 Cal.App.4th 1055, 1067 [interpreting arbitration clause language " '*any claim* arising from or *related to* this agreement' " as broad]; *EFund Capital Partners v. Pless*, *supra*, 150 Cal.App.4th at p. 1322 [describing as "very broad" an arbitration clause providing, " '*Any* dispute or other disagreement arising from or out of this [agreement] shall be submitted to arbitration' "]; see also *Medill v. Westport Ins. Corp.* (2006) 143 Cal.App.4th 819, 830 [interpreting language in an insurance contract]; *Southgate Recreation & Park Dist. v. California Assn. for Park and Recreation Insurance* (2003) 106 Cal.App.4th 293, 301 [same]; *Acceptance Ins. Co. v. Syufy Enterprises* (1999) 69 Cal.App.4th 321, 328 [same].) The words "arising out of " or "arising from," as used in the present settlement agreement "are generally given their 'commonsense meaning' [citation], which has been ' " 'understood to mean "originating from" "having its origin in," "growing out of" or "flowing from" or in short, "incident to, or having connection with" . . . .' " ' " (*Vitton Construction Co., Inc. v. Pacific Ins. Co.* (2003) 110 Cal.App.4th 762, 766-767.)

Here, the language of the settlement agreement reflected a clear intention on the part of CRV and KB to effect a global settlement of claims and, as indicated, "to buy their respective peace in regards to the relationship between them as it relates to the

18

Monterrey Park project *and all agreements and contracts relating thereto*." (Italics added.) The Monterrey Park project gave rise to KB's obligations pursuant to the subdivision improvement agreement with City, and KB's obligations sufficiently "relat[e] to" or "aris[e] from" that project, as well as the parties' purchase agreement, so as to fall within the broad language of the release. It is well established that a general release that explicitly covers unknown claims and specifically waives the provisions of Civil Code section 1542 is "completely enforceable and act[s] as a complete bar to all claims (known or unknown at the time of the release) despite protestations by one of the parties that he [or she] did not intend to release certain types of claims." (*San Diego Hospice v. County of San Diego* (1995) 31 Cal.App.4th 1048, 1053; see also *In re Mission Ins. Co.*, *supra*, 41 Cal.App.4th at pp. 837-839; *Winet v. Price*, *supra*, 4 Cal.App.4th at pp. 1166-1170.) CRV made a sufficient prima facie showing, via Dobron's declaration and the documents attached to KB's motion, of a probability of prevailing on its claim that KB's indemnity cross-complaint is barred by reason of the settlement agreement because it includes claims related to or arising from the parties' purchase agreement concerning the Monterrey Park project.

B. *Damages*

KB contends CRV presented no evidence that it suffered compensable contract damages as a result of KB's breach.[6] It first argues that CRV's asserted damages seek

---

6    We observe that KB did not raise CRV's failure to establish a proper measure of contract damages in its moving papers. The parties argued the issue of damages at the hearing on KB's motion, however, and CRV does not complain of unfairness in having to

19

return of the consideration it paid, which is recoverable only if CRV rescinds the settlement agreement and seeks restitution, not where CRV affirms the contract and sues for breach. KB further acknowledges that the settlement agreement contains an attorney fees provision, and that if CRV were to successfully defend against KB's cross-complaint, it may be entitled to seek attorney fees. But, citing the passage of Civil Code section 1717 in 1981 as acknowledged by *Walker v. Ticor Title Co. of California* (2012) 204 Cal.App.4th 363, 372, KB argues that contractual attorney fees are not damages, but an element of costs of suit.[7]

KB's contention pertaining to attorney fees as damages ignores the context of this breach of contract action. CRV has sued KB for its alleged breach of a release of claims,

respond to KB's arguments. We may consider the point, as a contention of insufficiency of the evidence can be raised for the first time on appeal. (See *Tahoe National Bank v. Phillips* (1971) 4 Cal.3d 11, 23, fn. 17 [insufficiency of the evidence to support an order]; see also *People v. Viray* (2005) 134 Cal.App.4th 1186, 1217.)

[7]     In *Walker v. Ticor Title Co. of California*, *supra*, 204 Cal.App.4th 363, the court explained: "While attorney fees awarded under a contract were, at one time, considered to be an element of contract damages [citation], that view changed with the enactment of Civil Code section 1717. While intended to ensure the mutuality of any contractual attorney fees provision [citation], the statute also constituted statutory authority for the award of contractual fees. Once contractual attorney fees could be deemed awarded pursuant to [Civil Code] section 1717, courts found them analogous to statutory attorney fees and declared them an element of costs of suit, rather than damages. [Citations.] The Legislature endorsed this view in 1981 by amending [Civil Code] section 1717 to add language expressly characterizing contractual attorney fees as a cost of suit." (*Walker*, at p. 372, fn. omitted.) "Following the amendment of [Civil Code] section 1717, ' "attorney's fees were to be seen as allowed by statute, rather than by contract." ' [Citation.] [¶] Accordingly, while the availability of an award of contractual attorney fees is created by the contract [citation], the specific language of the contract does not necessarily govern the award." (*Walker*, at pp. 372-373.) "Parties to a contract cannot, for example, enforce a definition of 'prevailing party' different from that provided in Civil Code section 1717." (*Walker*, at p. 373.)

the entire purpose of which is to avoid litigation. Thus, the natural consequence of such a breach is the hiring of counsel and incurring fees and costs of litigation to enforce the settlement agreement and defend against the released, wrongfully-brought, claim. As long as the settlement agreement provides for the recovery of attorney fees, such fees (as well as litigation costs) can constitute recoverable damages for breach of a release. (Civ. Code, § 3300.) This was the implicit holding in *Navellier v. Sletten* (2003) 106 Cal.App.4th 763, decided after the enactment of Civil Code section 1717, in which the appellate court pointed out respondents had not shown the parties' settlement agreement had an attorney fees provision, and *for that reason* held attorney fees incurred in connection with appellant's alleged breach of a settlement agreement were not an element of recoverable damages, and the respondents did not establish a probability of prevailing on their breach of contract claim so as to meet their burden on appellants' anti-SLAPP motion. (*Navellier*, at pp. 776-777; see also *Olson v. Arnett* (1980) 113 Cal.App.3d 59, 67-68.) Here, as KB points out, the parties' settlement agreement contains an attorney fee provision.

Nevertheless, we are compelled to conclude CRV did not meet its burden to demonstrate a probability of prevailing on its breach of contract cross-complaint. Nowhere in his declaration does Dobron state or suggest that CRV has incurred or will incur attorney fees or costs in connection with or as a result of KB's filing of its indemnity cross-complaint. The possibility of CRV incurring attorney fees and costs is not addressed in CRV's opposing papers. In its opposing papers, CRV argued only that "[a]s a result of KB's breach of the Settlement Agreement CRV did not obtain what it

21

paid $442,400 and bargained for which was a release of all claims related to the Monterrey Park Property."  Where, as here, a special motion to strike under section 425.16 meets the "arising from" prong, CRV must satisfy the second prong of the test and establish *evidentiary support* for its claim.  (*Navellier v. Sletten*, *supra*, 106 Cal.App.4th at p. 775.)  That KB raised legal issues in its motion did not relieve CRV of its burden "of presenting a sufficient 'showing of facts to sustain a favorable judgment' " (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821) via competent admissible evidence.  (*McGarry v. University of San Diego* (2007) 154 Cal.App.4th 97, 108; *City of Costa Mesa v. D'Alessio Investments, Inc.* (2013) 214 Cal.App.4th 358, 376.)  CRV cannot rely solely on its cross-complaint (*City of Costa Mesa*, at p. 376), it must present proof sufficient to demonstrate it sustained a proper contract measure of damages. (*Navellier*, at p. 775.)

Nor can CRV establish that it suffered compensable breach of contract damages by evidence that it agreed to turn over the holdback funds as consideration for KB's release.  Damages are a necessary element to a successful breach of contract action. (*Navellier v. Sletten*, *supra*, 106 Cal.App.4th at p. 775.)  "Damages awarded to an injured party for breach of contract 'seek to approximate the agreed-upon performance.' [Citation.]  The goal is to put the plaintiff 'in as good a position as he or she would have occupied' if the defendant had not breached the contract.  [Citation.]  In other words, the plaintiff is entitled to damages that are equivalent to the benefit of the plaintiff's contractual bargain."  (*Lewis Jorge Construction Management, Inc. v. Pomona Unified*

22

*School Dist.* (2004) 34 Cal.4th 960, 967-968, quoting *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.* (1994) 7 Cal.4th 503, 515 & 24 Williston on Contracts (4th ed.2002) § 64:1, p. 7.) " 'Contractual damages are "the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom." ' " (*Emerald Bay Community Assn. v. Golden Eagle Ins. Corp.* (2005) 130 Cal.App.4th 1078, 1088; see Civ. Code, § 3300.)

CRV's claimed damages do not give it what it bargained for in entering into the settlement agreement, simply because CRV would not expect return of its $442,400 if KB performed its contractual obligations. We are not persuaded by CRV's assertion that its action (and presumably its claim for $442,400 in damages) is based on a "failure of consideration" theory, which permits an action for breach of contract. CRV cites *Munoz v. MacMillan* (2011) 195 Cal.App.4th 648, *Habitat Trust for Wildlife, Inc. v. City of Rancho Cucamonga* (2009) 175 Cal.App.4th 1306, 1336 (*Habitat Trust*), and *Wilson v. Corrugated Kraft* (1953) 117 Cal.App.2d 691, for the propositions that (1) failure of consideration can result in an action for either rescission or breach of contract; (2) when a party's default in performance goes to the very root of the consideration bargained for, the breach amounts to a failure of consideration; and (3) a party is liable for a breach of contract under that theory when that party causes the failure by withholding its performance of the contract terms. According to CRV, KB's breach, i.e., its refusal to perform the terms of the settlement agreement by suing CRV in its cross-complaint, " 'goes to the very root of the consideration bargained for' and thus amounts to a failure of consideration."

None of these cases purport to address whether a party may seek breach of contract damages from a failure of consideration theory. *Wilson v. Corrugated Kraft Containers* involved a defendant who had rescinded a sales contract between it and the plaintiff; the Court of Appeal affirmed the judgment for the defendant on the plaintiffs' action for breach of contract brought after the defendant had formally cancelled it. (*Wilson v. Corrugated Kraft Containers*, *supra*, 117 Cal.App.2d at pp. 692-693.)  The Court of Appeal observed that the plaintiffs failed to submit all of their orders to the defendant, as the contract bound them to do, and their failure amounted to a material violation of the contract. (*Id*. at pp. 695-696.)  This default by the plaintiffs, the court held, entitled the defendant to rescind the contract. (*Id*. at p. 696.)  "The occurrence of a failure of consideration resulting from the willful failure of plaintiffs to perform an integral part of an entire contract is sufficient to entitle defendant to cancel." (*Id*. at p. 697.)  The *Wilson* court merely concluded the defendant was justified in considering itself discharged from further performance under the agreement. (*Id*. at pp. 697-698.)

Likewise, in *Habitat Trust*, a case involving multiple appeals, the defendants sought to cancel the contract at issue; they successfully moved for summary judgment on both their affirmative defense of failure of consideration (seeking to cancel the agreement to, inter alia, convey certain property to plaintiffs for conservation purposes in exchange for plaintiff's agreement not to object to a development project) as well as on their cross-complaint for rescission. (*Habitat Trust*, *supra*, 175 Cal.App.4th at pp. 1314, 1319, 1333, 1337.)  Specifically, in moving for summary judgment, the defendants argued a material failure of consideration to them (the failure of a city to approve the plaintiff to receive the

24

land) was a sufficient ground to cancel the contract under Civil Code section 1689, subd. (b)(4). (*Habitat Trust*, at p. 1337.) We do not read anything in *Habitat Trust* to authorize a breach of contract action, or breach of contract damages, on a theory of failure of consideration.

*Munoz v. MacMillan*, *supra*, 195 Cal.App.4th 648 neither expressly nor implicitly addresses a claim of failure of consideration; it held in the summary judgment context that a tenant could sue for expectancy damages based on an alleged breach of lease by her landlord if she could prove nonspeculative damages with reasonable certainty, and that the existence of a remedy in restitution did not preclude her from seeking a contract remedy. (*Id*. at pp. 660-662.) We fail to see *Munoz's* relevance to the question of whether CRV has submitted competent evidence that it suffered some form of compensable contract damages under a failure of consideration theory.[8]

Because CRV did not demonstrate, prima facie, that it had suffered compensable breach of contract damages, it did not make a showing that it would probably prevail on

---

[8]    In *Munoz*, the Court of Appeal addressed whether a tenant, Munoz, could maintain a breach of contract action against a landlord who had evicted her, via an unlawful detainer action, before the expiration of her right to possession. (*Munoz v. MacMillan*, *supra*, 195 Cal.App.4th at p. 653.) It concluded she could: "A landlord can breach a lease by evicting a tenant using judicial processes when the unlawful detainer judgment relied on for the writ of possession is later reversed." (*Id*. at p. 659.) The court went on to hold that Munoz "was entitled to seek compensation for losses she allegedly incurred following enforcement of the erroneous initial judgment in the unlawful detainer action. Munoz could have suffered economic loss as a result of her eviction even if the eviction was not 'wrongful' as a matter of tort law. Munoz's most straightforward remedy was to seek restitution in the underlying unlawful detainer action, not to bring a subsequent action for breach of contract. But the law does not bar Munoz from seeking contract damages in a separate action." (*Id.* at p. 650.)

the merits of its breach of contract action.  The purpose of section 425.16 is to screen out meritless claims, and a claim is just as meritless when a plaintiff or cross-complainant cannot prove damages as when it cannot prove liability.

## DISPOSITION

The order is reversed.  The matter is remanded and the superior court directed to grant KB Home Coastal, Inc.'s motion to strike CRV Imperial-Worthington, LP's cross-complaint for breach of contract.  The parties shall bear their own costs on appeal.


O'ROURKE, J.

WE CONCUR:


McCONNELL, P. J.


McDONALD, J.


26