[No. B115527. Second Dist., Div. Seven. Mar. 18, 1998.]

CHARLES E. THOMAS COMPANY, Cross-complainant and Appellant,
v.
TRANSAMERICA INSURANCE GROUP, Cross-defendant and
Respondent.

COUNSEL

Joseph J. Ryan for Cross-complainant and Appellant.

Susan T. Olson and Lisa Kralik for Cross-defendant and Respondent.

OPINION

**JOHNSON, Acting P. J.**—The Charles E. Thomas Company (Thomas) appeals from a judgment in favor of its insurance company, Transamerica Insurance Group (Transamerica), determining Transamerica owed no duty under its comprehensive general liability policy to defend Thomas in an action seeking to recover for losses caused by a leak in an underground fuel tank. We reverse.

### FACTS AND PROCEEDINGS BELOW

For purposes of determining Transamerica's duty to defend, there is no dispute as to the material facts.

Thomas designed and installed sensors for detecting leaks in two 10,000-gallon fuel storage tanks at a facility belonging to Blue Cross of California. Blue Cross kept the fuel on hand to power emergency backup equipment at the facility. A contractor working on one of the underground tanks punctured it, causing approximately 8,000 gallons of diesel fuel to escape. The leaks went undetected because Thomas's sensors did not work.

When it discovered one of its storage tanks was empty, Blue Cross reported the accident to the Los Angeles Fire Department. The fire department issued two violation notices to Blue Cross requiring it to perform specified remedial actions. We discuss these required remedial actions below.

Blue Cross filed an action against the contractor who caused the leak and Thomas, whose sensors failed to detect the leak, seeking recovery for "damages to [its] property, including repair and clean up costs in excess of $750,000, caused by the leakage of diesel fuel" from the punctured tank. Thomas tendered defense of the action to Transamerica under its comprehensive general liability policy and submitted the Blue Cross complaint and the fire department violation notices. After reviewing these documents, Transamerica refused to defend Thomas, citing the policy's "pollution exclusion" which provides, in relevant part, Transamerica will not defend or

indemnify Thomas with respect to: "any loss, cost or expense arising out of any . . . request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants."[1]

Thomas filed a cross-complaint against Transamerica, alleging breach of the insurance contract. Transamerica moved for summary judgment based on the "pollution exclusion" quoted above. The trial court granted the motion and subsequently entered judgment for Transamerica. Thomas filed a timely appeal. For the reasons explained below, we conclude Transamerica has failed to establish there is no potentiality for coverage and therefore owes a duty to defend Thomas.

## Discussion

### A. *Extent of the Duty to Defend.*

■ The determination whether the insurer owes a duty to defend is made by comparing the factual allegations of the complaint and the extrinsic facts known to the insurer with the terms of the policy. (*Montrose Chemical Corp. v. Superior Court* (1993) 6 Cal.4th 287, 295 [24 Cal.Rptr.2d 467, 861 P.2d 1153].) In making this determination, the coverage provisions of the policy are liberally construed in favor of the insured and the exclusions from coverage are narrowly construed against the insurer. (*Mariscal v. Old Republic Life Ins. Co.* (1996) 42 Cal.App.4th 1617, 1623 [50 Cal.Rptr.2d 224].) The duty to defend is excused only " 'if the third party complaint *can by no conceivable theory raise a single issue which could bring it within the policy coverage.*' " (*Montrose Chemical, supra,* 6 Cal.4th at p. 300, quoting *Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263, 276, fn. 15 [54 Cal.Rptr. 104, 419 P.2d 168], original italics.) Therefore, if a single issue exists which is even potentially within the policy coverage, Transamerica has a duty to defend Thomas against the Blue Cross action in its entirety. (*Buss* v. *Superior Court* (1997) 16 Cal.4th 35, 48 [65 Cal.Rptr.2d 366, 939 P.2d 766].)

Applying these rules to the present case, we conclude Blue Cross has alleged facts which give rise to indemnifiable and potentially indemnifiable losses under Thomas's property damage coverage.

### B. *Not All of Blue Cross's Claims Are Excluded Under the Pollution Exclusion.*

Although Transamerica refers to the exclusion at issue here as the "absolute pollution exclusion," it is no more absolute than the comprehensive

---

[1] It is undisputed diesel fuel is a "pollutant" under the policy.

general liability policy to which it attaches is comprehensive and general.[2]
■ Specifically, the portion of the pollution exclusion Transamerica relies on only excludes "loss, cost or expense *arising out of any . . . request, demand or order* that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants." (Italics added.) Obviously not excluded are any pollution-related losses, costs, or expenses which do *not* arise "out of any request, demand or order" that Thomas or Blue Cross "monitor, clean up, remove [etc.] pollutants."

Blue Cross has made no request or demand on Thomas to do any of the things mentioned in the pollution exclusion.

The Los Angeles Fire Department ordered Blue Cross to conduct a precision test, provide a soil analysis, certify its methods of monitoring and detecting leaks, connect its monitoring systems to visual and audible alarms, repair the leaking tank and discontinue its use until repaired, conduct tests on the repaired tank, provide a site assessment and secure the area from unauthorized entry. Under the pollution exclusion, Thomas is not covered for any loss, cost or expense to Blue Cross in complying with these orders. The complaint, however, also alleges Blue Cross was damaged by having to remove and replace both storage tanks, excavate, dispose of and recycle contaminated soil, and repair damage to its property where the leak occurred. None of these activities were requested, ordered or demanded by the Los Angeles Fire Department, or any other agency as far as the evidence shows. Therefore, these activities do not fall within the pollution exclusion.[3]

Transamerica argues the phrase "arising out of" encompasses all liability on the part of Thomas which would not have arisen but for the release of the diesel fuel. "Arising out of," Transamerica maintains, is much broader than "caused by" and requires only slight connection with, or incidental relationship between, the damages and the exclusion. Therefore, the pollution exclusion should be read as excluding all losses arising out of the pollution not merely all losses arising out of requests, demands or orders to take certain actions with respect to the pollution. We reject this argument.

The policy language is clear and unambiguous. It only excludes losses "arising out of any request, demand or order." If Transamerica had truly

[2]We note insurers have recently started referring to these policies as *commercial* general liability policies but even so they do not provide for general liability.

[3]At oral argument Transamerica claimed it was an undisputed fact in the summary judgment proceeding that all of Blue Cross's losses arose from the fire department's orders. Not so. What was undisputed in the summary judgment proceeding was that Transamerica had *contended* all of Blue Cross's losses arose from the fire department's orders. Thomas never admitted this contention.

intended an "absolute" exclusion of pollution-related liability it could have said so. (See, e.g., *Larsen Oil Co.* v. *Federated Service Ins. Co.* (D.Or. 1994) 859 F.Supp. 434, 436 [policy excluded losses " 'which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, release or escape of pollutants at any time' "].)[4]

The cases cited by Transamerica are not on point.

*Fiberboard Corp.* v. *Hartford Accident & Indemnity Co.* (1993) 16 Cal.App.4th 492, 503-504 [20 Cal.Rptr.2d 376] and the cases cited therein were cases in which the courts were interpreting the phrase "arising out of" as used in the coverage portions of the policies, not the exclusion portions. As previously noted, coverage provisions are liberally construed.

In *Century Transit Systems, Inc.* v. *American Empire Surplus Lines Ins. Co.* (1996) 42 Cal.App.4th 121 [49 Cal.Rptr.2d 567] and *Continental Cas. Co.* v. *City of Richmond* (9th Cir. 1985) 763 F.2d 1076, the courts were construing policies which excluded coverage for any claim "based on" assault and battery. In seeking to avoid this exclusion, the insureds in *Century Transit* argued the complaint against them alleged negligent hiring and therefore the claim was "based on" negligence, not assault and battery. The court disagreed, holding it is the facts of the claim, not the legal theory, which control coverage and exclusions. (42 Cal.App.4th at p. 127.) Similarly, in *Continental Casualty*, the insured argued the assault and battery exclusion did not apply because the complaint was based on violation of the victim's civil rights. Rejecting this argument, the court noted that without the underlying assault and battery there would have been no civil rights violation. (763 F.2d at p. 1081.) These two cases would be pertinent if the policy at issue in the present case excluded all losses based on the escape of pollutants. Under such an exclusion Thomas would be barred from arguing the losses were not based on the escape of pollutants but arose out of orders to remedy the escape of pollutants. However, as we have pointed out, this is not what Transamerica's policy provides and therefore *Century Transit* and *Continental Casualty* are inapplicable.

As a separate and independent ground for reversing the judgment, we conclude the facts pled in Blue Cross's complaint give rise to a potentially covered claim for property damage based on loss of the diesel fuel.

Although Blue Cross does not allege loss of the diesel fuel specifically in its claim for damages, it does allege approximately 8,000 gallons of diesel

---

[4]Transamerica's policy does contain such language but the language only applies to specified circumstances not present under the facts of this case.

fuel leaked from one of its tanks because Thomas's sensors did not detect the leak. In determining the potential for coverage, the ultimate question is whether the facts alleged in the complaint give rise to the potentiality of any liability within the coverage of the policy. (*Gray* v. *Zurich Insurance Co.*, *supra*, 65 Cal.2d at pp. 276-277.) Transamerica promised to indemnify Thomas for losses caused by property damage which is defined in the policy as "physical injury to tangible property" or "loss of use of tangible property that is not physically injured." Surely, Blue Cross lost the use of its diesel fuel when the fuel leaked out of the storage tank. Transamerica has failed to point to any exclusion which would prevent coverage for this loss.

## DISPOSITION

The judgment is reversed and the case remanded for further proceedings consistent with this opinion. Appellant is awarded costs on appeal.

Woods, J., and Neal, J., concurred.