[Nos. C038416, C039249. Third Dist. Feb. 5, 2003.]

SOUTHGATE RECREATION AND PARK DISTRICT, Plaintiff and Appellant, v.
CALIFORNIA ASSOCIATION FOR PARK AND RECREATION INSURANCE, Defendant and Respondent.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts 3 and 4 of the Discussion in the majority opinion and the concurring and dissenting opinions that address the court's award of attorney fees.

296

COUNSEL

McCormick, Barstow, Sheppard, Wayte & Carruth, James P. Wagoner, Patrick Fredette and Jared D. Beeson for Plaintiff and Appellant.

Kronick, Moskovitz, Tiedemann & Girard, Robin Leslie Stewart and Thomas W. Barth for Defendant and Respondent.

OPINION

DAVIS, J.—Southgate Recreation and Park District (Southgate) appeals from a summary judgment and from a postjudgment order of attorney fees in favor of California Association for Park and Recreation Insurance (CAPRI). CAPRI is a joint powers authority that administers a liability risk-pooling arrangement on behalf of its approximately 60 park and recreation member districts. We consolidated the two appeals.

The trial court found that CAPRI did not have to defend or indemnify Southgate against lawsuits filed by unpaid subcontractors on the Wildhawk Golf Course construction project undertaken by Southgate. We agree and shall affirm the judgment in the published parts of our opinion.

In the unpublished portions of our opinion we conclude the trial court did not err in denying Southgate's request to continue the summary judgment hearing. Additionally, for separate reasons, Justice Blease and I hold that the trial court did err in awarding CAPRI its attorney fees. Consequently, we shall reverse the attorney fee order. Justice Morrison would affirm the award of attorney fees.

BACKGROUND

In June 1996, Southgate contracted with Flint Construction (Flint), a general contractor, to build the Wildhawk Golf Course. Before completing

the project, Flint went bankrupt. To make matters worse, the sureties on the performance and payment bonds defaulted. Various unpaid subcontractors (the subcontractors) then sued Southgate and its directors, seeking payment for the goods and services they had provided on the project.

Southgate in turn sued CAPRI for damages and declaratory relief, seeking defense and indemnity of the subcontractor suits. CAPRI is a joint powers authority that administers a liability risk-pooling arrangement on behalf of its approximately 60 park and recreation member districts, including Southgate; as a joint powers authority, CAPRI is a separate public entity. (Gov. Code, §§ 6500 et seq., 990.8; see *Orange County Water Dist. v. Association of Cal. Water etc. Authority* (1997) 54 Cal.App.4th 772, 774-775, 777-778 [63 Cal.Rptr.2d 182] (*Orange County*).) CAPRI's basic purposes are to have its members pool self-insured losses, jointly purchase excess insurance, and share administrative and other claims-related services. (See *Orange County, supra,* 54 Cal.App.4th at pp. 774-775.) CAPRI operates under the terms of a joint powers agreement and an annually renewed memorandum of coverage.

CAPRI moved successfully for summary judgment, contending it had no duty to defend or indemnify Southgate on the underlying subcontractor claims.

On appeal, Southgate contends (1) CAPRI has a duty to defend Southgate based on the "personal injury" offense of "violation of property rights" contained in the 1997-1998 memorandum of coverage; (2) an exclusion for liability "arising out of or related to" construction contracts does not apply because the subcontractors allege noncontractual claims and there were no construction contracts between Southgate and the subcontractors; (3) the trial court abused its discretion in not continuing CAPRI's summary judgment motion to allow Southgate to depose David McMurchie (who was CAPRI's general counsel and Southgate's defense counsel); and (4) the trial court erred in awarding attorney fees to CAPRI on judicial estoppel grounds.

Before discussing these issues, we must set forth some general principles that will guide our discussion.

Because joint powers authority risk pools are ultimately member created and directed, they are not considered insurance in a conventional sense; they are an alternative to commercial insurance. (*City of South El Monte v. Southern Cal. Joint Powers Ins. Authority* (1995) 38 Cal.App.4th 1629, 1633-1634, 1639-1640 [45 Cal.Rptr.2d 729] (*South El Monte*); *Orange County, supra,* 54 Cal.App.4th at pp. 774-775, 777-778; Gov. Code, § 990.8, subd. (c).) In recognition of this, questions of defense and coverage are

answered by relying on rules of contract law that emphasize the parties' intent. (*South El Monte, supra,* 38 Cal.App.4th at pp. 1639, 1640.) ▮ The basic rule of contract interpretation is to effectuate the parties' intent as expressed in the contract's terms, which are given their common meaning. (*Century Transit Systems, Inc. v. American Empire Surplus Lines Ins. Co.* (1996) 42 Cal.App.4th 121, 126 [49 Cal.Rptr.2d 567] (*Century Transit*); Civ. Code, §§ 1636, 1638, 1639, 1644.) "Moreover, the *context* in which a term appears is critical." (*Century Transit, supra,* 42 Cal.App.4th at p. 126; see Civ. Code, § 1641.) Contractual language must be construed in the context of the contract as a whole, and in the circumstances of the case. (*Century Transit,* at p. 126.)

If the summary judgment papers establish there is no material issue of fact to be tried, summary judgment is properly granted. (Code Civ. Proc., § 437c, subd. (c).) We review those papers independently. (See *South El Monte, supra,* 38 Cal.App.4th at p. 1645.)

### DISCUSSION

1. *Duty to Defend Based on Coverage for Personal Injury Offense of Violation of Property Rights*

▮ Southgate contends that CAPRI has a duty to defend the subcontractor lawsuits against Southgate based on the "personal injury" offense of "violation of property rights" contained in the 1997-1998 memorandum of coverage. We disagree.

Two memorandums of coverage are at issue here, one covering the April 1996-1997 period, the other April 1997-1998.

The 1996-1997 memorandum of coverage is comprised of two parts, coverage part A—public entity liability, and coverage part B—public officials liability. This memorandum generally covers a member district for all sums it is "legally obligated to pay as damages because of personal injury or property damage or public officials errors and omissions liability, to which the coverage applies caused by an occurrence." Coverage part A for public entity liability covers certain defined injuries or damage: " 'bodily injury,' 'personal injury,' 'advertising injury,' or 'property damage' . . . ." "Personal injury" is defined as follows: "Personal injury means injury, other than bodily injury, arising out of one or more of the following offenses: [¶] a. False arrest, detention or imprisonment; [¶] b. Malicious prosecution; [¶] c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises . . . ; [¶] d. Oral or

written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or [¶] e. Oral or written publication of material that violate[s] a person's right of privacy. [¶] Personal injury also includes the following offenses, but only with respect to the Law Enforcement Activities of the Named Insured or [its] departmentally approved Law Enforcement Activities for others: [¶] f. Assault and battery; or [¶] g. Violation of civil rights; or h. [¶] *Violation of property rights.* [¶] i. Erroneous service of process." (Italics added.)

As for the 1997-1998 memorandum of coverage, CAPRI, for the first time, drafted its own coverage form rather than incorporating the form of an outside insurer. The 1997-1998 memorandum is similar to the 1996-1997 memorandum, with coverage A encompassing personal injury and property damage, and coverage B encompassing public officials and employee liability. "Personal injury" in the 1997-1998 memorandum is defined nearly identically to the 1996-1997 memorandum; however, subdivisions "f" through "i," including subdivision "h" (violation of property rights), are not prefaced by the law enforcement limitation found in the 1996-1997 memorandum (and subdivision "g" explicitly includes discrimination claims).

As Southgate concedes, all of the subcontractors' claims against it arise from the "same nucleus of common facts"—the subcontractors want Southgate to pay for the goods and services they provided at the Wildhawk construction project. The subcontractors' claims are based on various theories. They allege that: Southgate breached a contract with them (Southgate allegedly took over the project after Flint went bankrupt); they are third party beneficiaries of the Southgate-Flint contract; Southgate failed to ensure the adequacy of the surety performance and payment bonds; and Southgate improperly administered or failed to retain the construction funds to pay the subcontractors (this contention spawned several legal theories including conversion, negligent administration of trust proceeds, and violation of stop notice; the stop notice law for public works, Civil Code section 3179 et seq., provides an alternative to a mechanic's lien and allows a subcontractor or supplier to make a claim against the public entity project owner for a portion of the undisbursed construction proceeds).

Focusing on the conversion, breach of trust and stop notice claims of the subcontractors, Southgate argues that CAPRI has a duty to defend the subcontractors' suits under the "personal injury" offense of "violation of property rights" contained in the 1997-1998 memorandum of coverage. Southgate looks to the legal dictionary definition of "property right," defined as a "generic term which refers to any type of right to specific property

whether it is personal or real property, tangible or intangible." (Black's Law Dict. (6th ed. 1990) p. 1218.) As Southgate argues, the very nature of a conversion claim rests on a purported violation of a property interest. Likewise, there must be property for there to be a trust. And a stop notice claim triggers an immediate right against the earnings of the contractor held by the project owner.

Southgate's argument fails on two grounds. First, the subcontractors allege in common that Southgate is obligated to pay for their goods and services at the Wildhawk construction project. This obligation centers on Southgate's alleged contractual failings and improper administration of the Flint construction contract funds on behalf of the subcontractors. However, the 1997-1998 memorandum of coverage excludes from personal injury coverage a "[f]ailure to perform or breach of a contractual obligation."

Second, Southgate looks to the legal definition of "property right" as providing the legal foundation for its argument. But the 1997-1998 memorandum of coverage includes a violation of "property rights" only under its "personal injury" section. The same legal dictionary that Southgate uses to define "property right" defines "personal injury" (aside from bodily injury) as "[a]ny invasion of a personal right, including mental suffering and false imprisonment." (Black's Law Dict. (7th ed. 1999) p. 790.) In line with this definition, the 1997-1998 memorandum of coverage defines "personal injury" as "injury, other than bodily injury, arising out of one or more of the following offenses": false arrest, detention or imprisonment; malicious prosecution; wrongful eviction or entry or invasion of private occupancy; slander; libel; violation of privacy; assault and battery; violation of civil rights or claims of discrimination; *violation of property rights*; or erroneous service of process. It is in this context of classically personal interests that "violation of property rights" must be read. As noted, in contractual interpretation, "the *context* in which a term appears is critical." (*Century Transit, supra,* 42 Cal.App.4th at p. 126.) (Admittedly, slander and libel under the "personal injury" definition in the memorandums cover persons *and* organizations. But this is the only mention of an organization in the "personal injury" offenses, and slander and libel still typify a classically personal interest (reputation).) Furthermore, Southgate is left with only the 1997-1998 memorandum of coverage because the "violation of property rights" in the 1996-1997 memorandum is expressly limited to law enforcement activity.

We conclude that CAPRI does not have a duty to defend Southgate on the subcontractors' lawsuits under the "personal injury" offense of "violation of property rights." As we shall see, this conclusion is only bolstered when we turn to examine a critical exclusion in the memorandums of coverage.

## 2. *Exclusion for Liability Arising out of or Related to Construction Contract*

 Under the public official and employee liability portion of the two memorandums of coverage (titled coverage part B in the 1996-1997 memorandum; coverage B in the 1997-1998), a member district is generally covered for damages that it becomes legally obligated to pay because of a wrongful act. A "wrongful act" means any actual or alleged error or misstatement or misleading statement, act or omission, neglect, or negligence, including misfeasance and nonfeasance, by the district, its employees or officials in the discharge of duties.

Excluded from this coverage is any liability "[a]rising out of or related to construction . . . contracts or to any other contract for the purchase of goods or services."

Southgate argues that the subcontractors' underlying claims for conversion, breach of trust, and violation of stop notice are not based on the construction contract for the Wildhawk Golf Course; rather, these claims are based on Southgate's alleged negligence and alleged violation of a statutory duty to verify Flint's surety bonds.

 The term " '[a]rising out of' is a broad concept requiring only a 'slight connection' or an 'incidental relationship' between the injury and the excluded risk. [Citation.] Such language 'requires [the court] to examine the conduct underlying the . . . lawsuit, instead of the legal theories attached to the conduct.' " (*Century Transit, supra,* 42 Cal.App.4th at p. 127, fn. 4; see also *Continental Cas. Co. v. City of Richmond* (9th Cir. 1985) 763 F.2d 1076, 1080-1081 [cited by *Century Transit*]; see *Charles E. Thomas Co. v. Transamerica Ins. Group* (1998) 62 Cal.App.4th 379, 383-384 [72 Cal.Rptr.2d 577] (*Thomas*).) As this court has noted, the " 'arising out of' connective . . . broadly links" the exclusionary operative events with the exclusion. (*State Farm Fire & Casualty Co. v. Salas* (1990) 222 Cal.App.3d 268, 274, fn. 4 [271 Cal.Rptr. 642].) This court has also generally equated "arising out of" with "origination, growth or flow from the event." (*Pacific Indem. Co. v. Truck Ins. Exch.* (1969) 270 Cal.App.2d 700, 704 [76 Cal.Rptr. 281].) Nonetheless, an exclusionary clause must still be conspicuous, plain and clear to be enforceable. (*DeMay v. Interinsurance Exchange* (1995) 32 Cal.App.4th 1133, 1137 [38 Cal.Rptr.2d 581].)

 As noted, the subcontractors' claims against Southgate for conversion, breach of trust, and violation of stop notice are based on Southgate's alleged negligent or improper administration of the Flint construction contract funds on behalf of the subcontractors. These claims, then, arise out of

or are related to a construction contract. They fit comfortably within the construction contract exclusion.

The fact the subcontractors have alleged noncontractual theories that Southgate acted negligently with respect to the construction funds or breached statutory duties regarding the adequacy of the surety bonds changes nothing. It is not the underlying claims' legal theories that control coverage and exclusions—it is their facts. (*Century Transit, supra,* 42 Cal.App.4th at p. 127, fn. 4; *Thomas, supra,* 62 Cal.App.4th at p. 384.)

*Century Transit* provides a good example of this principle. There, a company, Century Transit, was sued for negligently hiring an employee who committed an assault and battery. The insurance policy excluded coverage for any claim "based on" assault and battery. To avoid this exclusion, Century Transit argued that since the underlying complaint alleged negligent hiring, the complaint was based on negligence rather than on assault and battery. The *Century Transit* court rejected this argument because the alleged negligence was based on the assault and battery. (*Century Transit, supra,* 42 Cal.App.4th at pp. 123-125, 127-128.)

Similarly, here, Southgate's alleged negligence and breach of statutory duties arise out of or are related to the Southgate-Flint construction contract. It is Southgate's failure to retain funds under that very contract and South-gate's failure to ensure an adequate payment bond for that very contract that comprise the basis of the subcontractor lawsuits against Southgate for conversion, breach of trust, and violation of stop notice. The construction contract exclusion applies. This linkage between the Southgate-Flint con-struction contract and Southgate's alleged failings regarding the subcontrac-tors, coupled with the "arising out of" language of the construction contract exclusion, defeats Southgate's argument that this exclusion applies only if there were direct construction contracts between Southgate and the subcontractors.

The decision in *Thomas, supra,* 62 Cal.App.4th 379, relied upon by Southgate, is consistent with our analysis. As the *Thomas* court emphasized, the exclusion there excluded only losses " '*arising out of any . . . request, demand or order.*' " (*Id.* at p. 383.) The *Thomas* analysis hinged on whether a loss arose from a request, demand or order. Similarly, the exclusionary analysis here hinges on whether the claimed losses arose from a construction contract.

In the end, we agree with the following comment from the trial court: "Interpreting [the two] Memoranda as a whole, it is clear that the self-insurance pool members did not intend, under any reasonable interpretation,

to act as a guarantor for unpaid contractual obligations for labor, materials and/or equipment provided to the Wildhawk construction project."

3., 4.*

. . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment is affirmed. The order awarding attorney fees to CAPRI is reversed. CAPRI's request for attorney fees on appeal is denied. Each party shall pay its own costs on appeal.

**BLEASE, Acting P. J.,** Concurring.—*

. . . . . . . . . . . . . . . . . . . . . . . . .

**MORRISON, J.,** Concurring and Dissenting.—*

. . . . . . . . . . . . . . . . . . . . . . . . .

Appellant's petition for review by the Supreme Court was denied April 23, 2003.

---

*See footnote, *ante,* page 293.