Filed 3/25/25; certified for publication 4/8/25 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| BILLY FORD, | C099113 |
| Plaintiff and Respondent, | (Super. Ct. No. 34-2022-00315620-CU-OE-GDS) |
| v. | |
| THE SILVER F, INC., | |
| Defendant and Appellant. | |

Defendant The Silver F, Inc., doing business as Parkwest Casino Lotus (Parkwest) appeals an order denying its motion to compel arbitration of plaintiff Billy Ford's (Ford) individual claims to recover civil penalties under the Labor Code Private Attorneys General Act of 2004 (PAGA) (Labor Code, § 2698, et seq.). The trial court denied the motion based on a finding that the parties' arbitration agreement specifically excluded all PAGA claims. Parkwest appeals, contending that the arbitration agreement is ambiguous as to whether it encompasses Ford's individual PAGA claims and that such ambiguity should be resolved in favor of arbitration. Considering the language of the arbitration

1

agreement and the circumstances surrounding its execution, we conclude the trial court correctly interpreted the agreement and therefore affirm.

BACKGROUND FACTS AND PROCEDURE

From September 2018 to December 2021, Ford worked as a full-time security guard for Parkwest. Upon his hiring, Ford signed an arbitration agreement, pursuant to which he agreed to arbitrate any employment-related disputes. However, the arbitration agreement expressly "does not apply" to claims for workers' compensation or unemployment compensation, specified administrative complaints, Employment Retirement Income Security Act (ERISA) claims, or, as relevant here, "representative claims under [PAGA]."

In addition to the arbitration clause, the arbitration agreement contains a class, collective, and representative action waiver. It provides: "Except where prohibited by federal law, [Parkwest] and I agree that we expressly waive the right to commence arbitration or to file a complaint in court in the form of a class, collective, or representative action on behalf of others. . . . In the event a court determines this waiver is unenforceable with respect to any claim, then this waiver shall not apply to that claim, that claim must be filed in a court of competent jurisdiction, and such court shall be the exclusive forum for that claim." (Capitalization omitted.)

The arbitration agreement additionally includes a separate severability clause. It states: "If any court of competent jurisdiction declares that any part of this [a]greement is illegal, invalid, or unenforceable, such declaration will not affect the legality, validity, or enforceability of the remaining parts of this [a]greement and the illegal, invalid, or unenforceable part will no longer be part of the [a]greement."

In February 2022, Ford filed a complaint against Parkwest, alleging a single cause of action under PAGA for Labor Code violations suffered by him and by other employees. Ford specifically alleged that Parkwest unlawfully required its employees to undergo mandatory, off-the-clock health screenings prior to the start of their work shifts

2

and, consequently, issued inaccurate wage statements and failed to pay all the wages due to its employees.

Relying on the parties' arbitration agreement, Parkwest moved to compel arbitration of Ford's "individual" PAGA claims (i.e., those arising from Labor Code violations that Ford personally sustained) and to dismiss Ford's "representative" PAGA claims (i.e., those arising from Labor Code violations suffered by other employees). Parkwest's motion was based on *Viking River Cruises, Inc. v. Moriana* (2022) 596 U.S. 639, 648-649 (*Viking River*), which established that PAGA claims are divisible into "individual" and "representative" components, with the individual claims being subject to arbitration. Ford opposed the motion, arguing that the agreement expressly excluded *all* PAGA claims—both individual and nonindividual—from the scope of arbitration.

After a hearing, the trial court denied the motion. This appeal followed.

DISCUSSION

Parkwest contends the trial court erred by interpreting the parties' arbitration agreement to exclude Ford's individual PAGA claims. We find no error.

A.    *Legal Background*

1.    *The Federal Arbitration Act*

The parties' arbitration agreement is expressly governed by the Federal Arbitration Act (FAA) (9 U.S.C. § 1 et seq.). Enacted in response to a perception that courts were unduly hostile to arbitration agreements (*Epic Sys. Corp. v. Lewis* (2018) 584 U.S. 497, 505), the FAA "was designed 'to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate,' [citation] . . . and to place such agreements ' "upon the same footing as other contracts" ' " (*Volt Info. Scis. v. Bd. of Trs.* (1989) 489 U.S. 468, 478). Under the FAA, an arbitration agreement is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." (9 U.S.C. § 2.) The United States Supreme Court has described this provision as reflecting "both a 'liberal federal policy favoring arbitration,' [citation,] and the

3

'fundamental principle that arbitration is a matter of contract.' " (*AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. 333, 339.)

Although the FAA permits the invalidation of arbitration clauses based on generally applicable contract defenses, the FAA precludes states from singling out arbitration provisions for disfavored treatment. (*Garcia v. KND Development 52, LLC* (2020) 58 Cal.App.5th 736, 744.) The FAA preempts state laws that facially discriminate against arbitration or that impose requirements incompatible with the fundamental attributes of arbitration. (*Hernandez v. Sohnen Enterprises, Inc.* (2024) 102 Cal.App.5th 222, 243, review granted, Aug. 21, 2024, S285696, briefing deferred; *Gallo v. Wood Ranch USA, Inc.* (2022) 81 Cal.App.5th 621, 637-641; *Prima Donna Development Corp. v. Wells Fargo Bank, N.A.* (2019) 42 Cal.App.5th 22, 36.) Even "generally applicable" state rules are not immune to preemption if they conflict with the FAA's objectives. (*AT&T Mobility LLC v. Concepcion*, *supra*, 563 U.S. at pp. 341, 343, 352.)

### 2. PAGA

"The Legislature enacted PAGA almost two decades ago in response to widespread violations of the Labor Code and significant underenforcement of those laws. [Citations.] Before PAGA's enactment, tools for enforcing the Labor Code were limited. Some statutes allowed employees to sue their employers for damages resulting from Labor Code violations such as unpaid wages. [Citations.] Other Labor Code violations were punishable only as criminal misdemeanors, which local prosecutors tended not to prioritize. [Citation.] Additionally, several statutes provided civil penalties for Labor Code violations, but only state labor law enforcement agencies could bring an action for civil penalties and those agencies lacked sufficient enforcement resources." (*Adolph v. Uber Technologies, Inc.* (2023) 14 Cal.5th 1104, 1116 (*Adolph*).) PAGA addressed these problems by creating new civil penalties for Labor Code violations and empowering " 'aggrieved employees,' " acting as private attorneys general, to recover those penalties. (*Id*. at p. 1116; *Arias v. Superior Court* (2009) 46 Cal.4th 969, 980.)

4

A PAGA claim is " 'legally and conceptually different' " from an employee's individual claim for damages and statutory penalties.  (*Moniz v. Adecco USA, Inc.* (2021) 72 Cal.App.5th 56, 74, overruled in part on other grounds by *Turrieta v. Lyft, Inc.* (2024) 16 Cal.5th 664, 708-710.)  A PAGA claim is a type of qui tam action, designed primarily to benefit the public, not the party bringing the action.  (*Kim v. Reins International California, Inc.* (2020) 9 Cal.5th 73, 81; *Viking River*, *supra*, 596 U.S. at p. 645.)  An aggrieved employee suing under PAGA does so as the proxy or agent of the state, acting on behalf of himself or herself and other current or former employees, to recover civil penalties that otherwise would have been assessed and collected by the state's labor law enforcement agencies.[1]  (*Moniz*, at p. 74.)  Any penalties recovered are "dedicated largely 'to public use . . . instead of being awarded entirely to a private plaintiff.' "  (*Adolph*, *supra*, 14 Cal.5th at p. 1116.)  Although the statute gives "aggrieved employees" a right to assert the state's claims for civil penalties on a representative basis, it does not create any private rights or private claims for relief.  (*Viking River*, at p. 646.)  The governmental entity is " 'always the real party in interest in the suit.' "  (*Id*. at p. 645.)  "And because PAGA actions are understood to involve the assertion of the government's claims on a derivative basis, the judgment issued in a PAGA action is binding on anyone 'who would be bound by a judgment in an action brought by the government,' " including nonparty aggrieved employees.  (*Id*. at p. 646; *Adolph*, at p. 1117.)

  3.  *Iskanian*

In *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348 (*Iskanian*), overruled in part by *Viking River*, *supra*, 596 U.S. at page 639, the California

---

[1]  In July 2024, the Governor signed Assembly Bill No. 2288 (2023-24 Reg. Sess.), which significantly amends PAGA by, among other things, requiring the aggrieved employee filing the lawsuit to have personally suffered the Labor Code violations alleged in the claim.  (Lab. Code, § 2699, subd. (a).)  However, with certain exceptions not relevant here, the amendments apply only to civil actions filed on or after June 19, 2024.  (*Id*., subd. (v).)

Supreme Court considered whether an employee's right to bring a PAGA action is waivable. The plaintiff in *Iskanian* had signed an agreement providing that any individual claims against the employer arising out of the plaintiff's employment were subject to arbitration. (*Iskanian*, at p. 360.) The agreement also purported to waive the employee's right to bring any "representative" claims, such as those under PAGA. (*Id.* at p. 362.) When the plaintiff filed a complaint against his employer, asserting claims as an individual and in a representative capacity under PAGA, the employer moved to enforce the terms of the arbitration agreement, including the representative claims waiver. (*Id.* at pp. 361, 392.) The trial court ruled in favor of the employer, and the appellate court affirmed. (*Id.* at pp. 361-362.) The California Supreme Court granted review. (*Id.* at p. 362.)

On review, the California Supreme Court examined two questions related to the waiver of representative (PAGA) claims: (1) whether arbitration agreements requiring employees to waive their right to bring representative PAGA actions are unenforceable under state law and, if so, (2) whether the FAA preempts that rule. (*Iskanian*, *supra*, 59 Cal.4th at p. 378.) Regarding the first question, the court held that a predispute waiver of the right to bring a representative PAGA action is unenforceable. (*Id.* at pp. 382-384.) This is because such waivers "harm the state's interests in enforcing the Labor Code and in receiving the proceeds of civil penalties used to deter violations," and are therefore contrary to public policy. (*Id.* at p. 383.) The court recognized that the plaintiff's waiver potentially permitted him to assert an "individual" PAGA claim based on Labor Code violations that he personally suffered, but the court declined to decide whether such a claim is cognizable, explaining that "whether or not an individual claim is permissible under PAGA, a prohibition of *representative* claims frustrates the PAGA's objectives." (*Id.* at p. 384.)

On the second question, the California Supreme Court held that the FAA did not preempt the state law rule invalidating PAGA waivers. (*Iskanian*, *supra*, 59 Cal.4th at

6

pp. 384-389.)  It reasoned that a PAGA claim lies outside the FAA's coverage because "the FAA aims to ensure an efficient forum for the resolution of *private* disputes, whereas a PAGA action is a dispute between an employer and [a] state [a]gency."  (*Id*. at p. 384.)

Following the decision in *Iskanian*, California courts unanimously endorsed the view espoused in *Reyes v. Macy's, Inc.* (2011) 202 Cal.App.4th 1119, 1123-1124, that *every* PAGA action is a representative action on behalf of the state and that "a single representative PAGA claim *cannot* be split into an arbitrable individual claim and a nonarbitrable representative claim."  (*Williams v. Superior Court* (2015) 237 Cal.App.4th 642, 649; *Perez v. U-Haul Co. of California* (2016) 3 Cal.App.5th 408, 421 [agreeing with *Williams* that an employer cannot force an employee to split a PAGA claim into "individual" and "representative" components]; *Correia v. NB Baker Electric, Inc.* (2019) 32 Cal.App.5th 602, 625 [same]; *Brooks v. AmeriHome Mortgage Co., LLC* (2020) 47 Cal.App.5th 624, 629 [same].)

In *Kim v. Reins International California, Inc.*, *supra*, 9 Cal.5th at page 87, the California Supreme Court cited with approval appellate court decisions rejecting efforts to split PAGA claims into individual and representative components, stating:  "There is no individual component to a PAGA action because ' "*every* PAGA action . . . is a representative action on behalf of the state." ' [Citation.]  Plaintiffs may bring a PAGA claim *only* as the state's designated proxy, suing on behalf of *all* affected employees."

Thus, in the wake of *Iskanian*, California law was settled that PAGA claims could not be split into "individual" and "representative" components through an arbitration agreement.  (*Semprini v. Wedbush Securities Inc.* (2024) 101 Cal.App.5th 518, 528; *Provost v. YourMechanic, Inc.* (2020) 55 Cal.App.5th 982, 993-995; see *Adolph*, *supra*, 14 Cal.5th at p. 1118.)  This was California law when Ford and Parkwest entered into their 2018 arbitration agreement.

### 4. *Viking River*

In June 2022, the United States Supreme Court issued its decision in *Viking River*, *supra*, 596 U.S. at page 639, which considered whether the FAA preempts California's rule invalidating contractual waivers of PAGA claims. (*Id*. at p. 643.) The plaintiff in *Viking River* filed a PAGA action against her former employer, alleging a variety of Labor Code violations sustained by her and other Viking employees. (*Id*. at p. 647.) When she was hired, the plaintiff had agreed to arbitrate any dispute arising out of her employment. (*Ibid*.) The arbitration agreement included a waiver for any class, collective, or representative PAGA action. (*Ibid*.) Relying on the arbitration agreement, Viking moved to compel arbitration of the plaintiff's "individual" PAGA claims and to dismiss her "representative" PAGA claims. (*Id*. at p. 648.) The trial court denied the motion and the state appellate court affirmed. (*Ibid.*)

On certiorari, the United States Supreme Court rejected the *Iskanian* court's determination that PAGA claims are outside the scope of the FAA because a PAGA claim is " 'not a dispute between an employer and an employee arising out of their contractual relationship,' but 'a dispute between an employer and the *state*.' " (*Viking River*, *supra*, 596 U.S. at p. 652, fn. 4.) While acknowledging that the FAA is limited to controversies " 'aris[ing] out of' " a contractual relationship, the court held that disputes resolved in PAGA actions satisfy this requirement. (*Ibid*.) Further, the court held that "regardless of whether a PAGA action is in some sense also a dispute between an employer and the State, nothing in the FAA categorically exempts claims belonging to sovereigns from the scope of [the FAA]." (*Ibid*.)

Turning to the preemption issue, the United States Supreme Court first observed that the "lexicon" surrounding PAGA claims "tends to use the word 'representative' in two distinct ways . . . ." (*Viking River*, *supra*, 596 U.S. at p. 648.) First, every PAGA action is "representative" in that they are brought by employees acting as representatives—i.e., as agents or proxies—of the state. (*Ibid*.) In this sense, there is no

8

" 'individual component' " to a PAGA action. (*Ibid*.) Second, the court explained that "PAGA claims are also called 'representative' when they are predicated on code violations sustained by other employees." (*Ibid*.) When used in this manner, the court noted that it "makes sense to distinguish 'individual' PAGA claims, which are premised on Labor Code violations actually sustained by the plaintiff, from 'representative' (or perhaps quasi-representative) PAGA claims arising out of events involving other employees." (*Id*. at pp. 648-649.) The court used the terms "individual" and "nonindividual" to distinguish between these two types of PAGA claims. (*Id*. at pp. 649, 662.)

Having made this distinction, the United States Supreme Court then held that the FAA does *not* preempt "*Iskanian*'s principal rule" prohibiting wholesale waivers of an employee's right to pursue "representative" PAGA claims in the first sense. (*Viking River*, *supra*, 596 U.S. at pp. 649, 662.) In other words, *Viking River* did not disturb *Iskanian*'s rule that a contractual waiver of the right to prosecute PAGA claims is unenforceable under California law. (*Nickson v. Shemran, Inc*. (2023) 90 Cal.App.5th 121, 129.)

Yet the United States Supreme Court found the FAA does preempt "*Iskanian*'s secondary rule" precluding the division of PAGA claims into individual and nonindividual components through an agreement to arbitrate. (*Viking River*, *supra*, 596 U.S. at p. 662.) The court held that "[t]his prohibition on contractual division of PAGA actions into constituent claims unduly circumscribes the freedom of parties to determine 'the issues subject to arbitration' " and is therefore incompatible with the FAA. (*Id*. at pp. 659, 662.) Thus, under *Viking River*, where a predispute agreement provides for arbitration of a party's individual PAGA claims, "that portion of the [PAGA] action may be split off and compelled to arbitration, while the remaining nonindividual [PAGA] claims remain for disposition in court." (*Nickson v. Shemran, Inc.*, *supra*, 90 Cal.App.5th at p. 130.)

9

Applying these conclusions to the facts in *Viking River*, the United States Supreme Court held that the parties' arbitration agreement was invalid insofar as it purported to waive the plaintiff's right to bring representative claims under PAGA. (*Viking River*, *supra*, 596 U.S. at p. 662.) However, because the arbitration agreement contained a severability clause—specifying that if any portion of the waiver remained valid, it would be enforced in arbitration (*id*. at p. 647)—the court held that Viking could enforce the arbitration agreement insofar as it mandated arbitration of the plaintiff's individual PAGA claims (*id*. at p. 662). As for the nonindividual PAGA claims, the court concluded that PAGA provides no mechanism to adjudicate such claims once a plaintiff's individual PAGA claims have been committed to a separate proceeding. Thus, the court held the "correct course" as a matter of state law was to dismiss the nonindividual PAGA claims for lack of statutory standing. (*Id*. at p. 663; but see *id*. at p. 664 [conc. opn. of Sotomayor, J.] [noting that California courts will have the last word on the construction of state law].)

      5.    *Adolph*

In *Adolph*, *supra*, 14 Cal.5th at page 1104, the California Supreme Court addressed the question left open in *Viking River*: whether an aggrieved employee who has been compelled to arbitrate individual PAGA claims maintains a standing to pursue nonindividual PAGA claims in court. (*Adolph*, at pp. 1114.) The court held the answer is "yes." (*Ibid*.) The court explained that a worker becomes an " 'aggrieved employee' " with standing to litigate PAGA claims upon sustaining a Labor Code violation and the worker does not lose standing to litigate nonindividual claims simply because the individual claims have been ordered to arbitration. (*Adolph*, at p. 1121.) In reaching this conclusion, the court emphasized that it was not bound by *Viking River*'s contrary interpretation because the California Supreme Court is " ' "the final arbiter of . . . state law." ' " (*Adolph*, at p. 1119; see *Seifu v. Lyft, Inc.* (2023) 89 Cal.App.5th 1129, 1139-1140, review granted, June 14, 2023, S279932, review dismissed by *Seifu v. Lyft, Inc.*

10

(2023) 312 Cal.Rptr.3d 821.)  *Adolph* therefore seems to accept *Viking River*'s holding that an individual PAGA claim may be compelled to arbitration while nonindividual PAGA claims are litigated in court.  (*Adolph*, at p. 1114; *DeMarinis v. Heritage Bank of Commerce* (2023) 98 Cal.App.5th 776, 787.)

      B.     *Standard of Review*

To determine whether the parties agreed to arbitrate a particular controversy, we apply general principles of California contract law.  (*Mondragon v. Sunrun Inc.* (2024) 101 Cal.App.5th 592, 602.)  The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties at the time of contract formation.  (Civ. Code, § 1636.)  "We ascertain that intention solely from the written contract if possible, but also consider the circumstances under which the contract was made and the matter to which it relates.  [Citations.]  We consider the contract as a whole and interpret the language in context, rather than interpret a provision in isolation.  [Citation.]  We interpret words in accordance with their ordinary and popular sense, unless the words are used in a technical sense or a special meaning is given to them by usage.  [Citation.]  If contractual language is clear and explicit and does not involve an absurdity, the plain meaning governs."  (*Dameron Hospital Assn. v. AAA Northern California, Nevada & Utah Ins. Exchange* (2014) 229 Cal.App.4th 549, 567.)

When interpreting the provisions in an arbitration agreement covered by the FAA, due regard must be given to the federal policy favoring arbitration and, as a result, ambiguities as to the scope of the arbitration clause should be resolved in favor of arbitration.  (*Mastrobuono v. Shearson Lehman Hutton* (1995) 514 U.S. 52, 62; see *Granite Rock Co. v. Int'l Bhd. of Teamsters* (2010) 561 U.S. 287, 301; but see *Lamps Plus, Inc. v. Varela* (2019) 587 U.S. 176, 183, 189 [courts may not infer from an ambiguous agreement that parties have consented to class arbitration].)

At the same time, arbitration is a matter of consent, not coercion (*Lamps Plus v. Varela*, *supra*, 587 U.S. at p. 184), and " 'a party cannot be required to submit to

11

arbitration any dispute which he has not agreed so to submit' " (*AT&T Techs. v. Communs. Workers of Am.* (1986) 475 U.S. 643, 648). "[W]e do not override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated." (*EEOC v. Waffle House, Inc.* (2002) 534 U.S. 279, 294; see *Morgan v. Sundance, Inc.* (2022) 596 U.S. 411, 418-419 ["the FAA's policy 'is based upon the enforcement of contract, rather than a preference for arbitration' "].)

Where, as here, the language of the arbitration provision is not in dispute and no extrinsic evidence was introduced, the trial court's decision as to arbitrability is reviewed de novo. (*Duran v. EmployBridge Holding Co.* (2023) 92 Cal.App.5th 59, 65.)

C.     *Analysis*

The issue presented in this appeal is one of contract interpretation, i.e., whether the parties' arbitration agreement requires arbitration of Ford's PAGA claims. For purposes of this appeal, there is no dispute that while the arbitration agreement generally applies to all employment-related disputes, it specifically excludes " 'representative claims under [PAGA].' " The parties disagree on how to interpret this exclusion.

Parkwest argues that, under *Viking River*, PAGA claims are "representative" in two ways: First, all PAGA claims are "representative" in the sense that a plaintiff brings a PAGA claim as an agent or proxy for the state. Second, some PAGA claims are "representative" in the sense that they are predicated on code violations suffered by employees other than the plaintiff. Because the term "representative" has two possible meanings, Parkwest argues the exclusion for "representative claims under [PAGA]" is, at best, ambiguous about whether it was intended to exclude all PAGA claims or only those nonindividual claims that the plaintiff might assert on behalf of other employees. Thus, Parkwest contends, we must apply the FAA's presumption of arbitrability and construe the agreement to permit arbitration of Ford's individual PAGA claims.

Ford does not dispute that, under the reasoning of *Viking River*, the exclusionary clause is ambiguous as to the meaning of the term "representative," but Ford argues the trial court correctly resolved this ambiguity against Parkwest as the drafter of the arbitration agreement. Ford also argues that because the waiver of "representative" claims is unenforceable, any PAGA claim must proceed in court instead of arbitration.

The trial court, in contrast, found that "the agreement is not reasonably susceptible to an interpretation that 'representative claims under [PAGA]' means anything other than *all* PAGA claims." Thus, the court concluded that Ford's PAGA claims were unambiguously excluded from the scope of arbitration.

As we explain, we are not persuaded by either party's position. Instead, we agree with the trial court's interpretation.

We begin our analysis by restating that the fundamental goal of contract interpretation is to give effect to the mutual intent of the parties at the time of contract formation. (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 18; Civ. Code, § 1636.) To ascertain that intent, we look to the language of the contract, construing the words in the context of the instrument as a whole and the circumstances under which it was made. (*Southgate Recreation and Park Dist. v. California Assn. for Park and Recreation Ins.* (2003) 106 Cal.App.4th 293, 298; *Camacho v. Target Corp.* (2018) 24 Cal.App.5th 291, 306.)

The relevant language from the parties' arbitration agreement provides: "[Parkwest] and [Ford] hereby both agree that any [employment-related] issue between [them] . . . must be resolved exclusively through: (i) mediation, and if that fails to resolve the dispute; (ii) binding arbitration or, if that is not possible; (iii) general judicial reference . . . . *However, this Agreement does not apply to claims for workers compensation or unemployment compensation, an administrative complaint with the Equal Employment Opportunity Commission, California's Department of Fair Employment and Housing, the National Labor Relations Board or any similar state or*

13

*federal agency . . . , claims with respect to ERISA, and representative claims under [PAGA].*" (Italics added.)

In construing the language of this exclusionary clause, we are guided by the principle of statutory construction known as *noscitur a sociis*, which means that a word takes meaning from the company it keeps. (*People v. Hernandez* (2017) 10 Cal.App.5th 192, 200.) Under this principle, " 'the meaning of a word may be enlarged or restrained by reference to the object of the whole clause in which it is used.' " (*Credit Suisse First Boston Mortgage Capital, LLC v. Danning, Gill, Diamond & Kollitz* (2009) 178 Cal.App.4th 1290, 1298.) Here, in addition to "representative claims under [PAGA]," the arbitration agreement excludes "claims for workers compensation or unemployment compensation"; ERISA claims; and administrative complaints submitted to a governmental agency. These are all examples of employment-related claims that an employee is likely to bring against an employer, and they are not claims ordinarily pursued on a class, collective, or representative basis. Therefore, the doctrine of *noscitur a sociis* supports the conclusion that the parties intended the PAGA carve out to be construed broadly, similar to the other types of claims excluded from the scope of arbitration. (See *Busker v. Wabtec Corp.* (2021) 11 Cal.5th 1147, 1160, fn. 11; *People v. Multani* (2024) 106 Cal.App.5th 1334, 1348.)

We also must take account of the circumstances under which the contract was executed. (Civ. Code, § 1647; *Arriagarazo v. BMW of North America, LLC* (2021) 64 Cal.App.5th 742, 748; *Camacho v. Target Corp.*, *supra*, 24 Cal.App.5th at p. 306.) Here, at the time the parties entered into the arbitration agreement, California law was settled that *every* PAGA action was a "representative" action and that PAGA claims could *not* be split into "individual" and "representative" components through an agreement to arbitrate. (See Discussion, part A.3, *ante*.) The parties to a contract are presumed to have had the existing law in mind when they executed their agreement. (*California Assn. of Highway Patrolmen v. Department of Personnel Admin.* (1986) 185 Cal.App.3d 352, 364;

see *Swenson v. File* (1970) 3 Cal.3d 389, 393 [laws enacted after the execution of an agreement are not ordinarily deemed to become part of the agreement unless the language clearly indicates this intention].) Because the parties' contract was formed prior to *Viking River*, at a time when the law established that PAGA claims could not be split into arbitrable "individual" claims and nonarbitrable "representative" claims, we conclude the only reasonable interpretation of the exclusion of "representative claims under [PAGA]" is that it was intended to exclude all PAGA claims.

*Viking River*—decided after the parties entered into their arbitration agreement— does not mandate a different result. Although *Viking River* may have changed the law about whether PAGA claims are divisible into individual and nonindividual components (see *Newman v. Emerson Radio Corp.* (1989) 48 Cal.3d 973, 978), *Viking River* did not change the principle that a party cannot be compelled to arbitrate a dispute that he or she did not agree to resolve by arbitration. As our colleagues in the Second Appellate District observed in *Mondragon v. Sunrun Inc.*, *supra*, 101 Cal.App.5th at page 592, "*Viking River* has nothing to say about whether there was an agreement to arbitrate [the plaintiff's] individual PAGA claims." (*Id.* at p. 613; see *Pauma Band of Luiseno Mission Indians of the Pauma & Yuima Reservation v. California* (9th Cir. 2015) 813 F.3d 1155, 1165 ["a contract provision has only one true meaning—what it meant when written"].)

We find further support for our conclusion in the fact that the exclusionary clause and representative claims waiver use different language. It is a general rule of interpretation that where different words or phrases are used in one section than in other sections of an agreement, it is presumed a different meaning was intended. (*Department of Alcoholic Beverage Control v. Alcoholic Beverage Control Appeals Bd.* (2018) 29 Cal.App.5th 410, 418.) Here, both the waiver and the exclusionary clause use the term "representative," but only the waiver adds the qualifying phrase "on behalf of others." This supports our interpretation that the parties intended the phrase "representative claims under [PAGA]" to refer broadly to all PAGA claims, not just those

15

brought on behalf of other employees. (See *Gregg v. Uber Technologies, Inc.* (2023) 89 Cal.App.5th 786, 798-800, review granted, June 14, 2023, S279722, review dismissed by *Gregg v. Uber Technologies, Inc.* (2023) 312 Cal.Rptr.3d 823 [finding "representative action brought" under PAGA "*on behalf of others*" excluded individual PAGA claims].)

Parkwest attempts to explain this discrepancy by arguing that the exclusionary clause is not limited to arbitration; rather, it excludes representative PAGA claims from every provision of "th[e] Agreement," including the waiver. We do not find this interpretation tenable. The structure of the arbitration agreement shows that the phrase "this Agreement" in the exclusionary clause refers back to the agreement described in the preceding sentence, in which the parties agreed to resolve their disputes by mediation, arbitration, or judicial reference. We do not construe it as excluding the specified claims from the entire agreement.

Parkwest additionally objects that the interpretation we adopt renders the word "representative" superfluous because all PAGA claims are "representative" in the sense that they are brought by employees acting as representatives of the state. Parkwest asserts that if the intent was to exclude all PAGA claims, the parties simply could have excluded "claims under [PAGA]," without using the word "representative." Citing *Hernandez v. Sohnen Enterprises, Inc.*, *supra*, 102 Cal.App.5th at page 241, review granted, Parkwest invokes the general principle against interpreting contract language in a manner that renders some part surplusage. But this principle is only a guide and should not be mechanically applied to defeat the intent of the parties. (*Presbyterian Camp & Conference Centers, Inc. v. Superior Court* (2021) 12 Cal.5th 493, 509; *Sprinkles v. Associated Indemnity Corp.* (2010) 188 Cal.App.4th 69, 82.) Here, even if our interpretation gives rise to a minor redundancy, it is not one that is unusual in the context of PAGA claims. For all of the reasons described, we are convinced that ours is the only reasonable interpretation based on the language of the arbitration agreement and the circumstances under which it was made. Thus, we conclude the parties' intended the

16

exclusionary clause to exclude *any* PAGA claim brought by Ford acting as a representative of the state, and not only PAGA claims premised on code violations suffered by other employees.

DISPOSITION

The order denying Parkwest's motion to compel arbitration is affirmed.  Ford shall recover his costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1) & (2).)

_____\s\_____
Krause, J.

We concur:

\_\_\_\_\_\s\_____
Hull, Acting P. J.

\_\_\_\_\_\s\_____
Renner, J.

Filed 4/8/25

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| BILLY FORD, | C099113 |
| Plaintiff and Respondent, | (Super. Ct. No. 34-2022-00315620-CU-OE-GDS) |
| v. | |
| THE SILVER F, INC., | ORDER CERTIFYING OPINION FOR PUBLICATION |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Sacramento County, Lauri A. Damrell, Judge.  Affirmed.

Jackson Lewis, Shannon B. Nakabayashi and Dylan B. Carp for Defendant and Appellant.

Diversity Law Group, Larry W. Lee, Christine S. Lee; Webber Law Group, Kelsey A. Webber, Shaelyn A. Stewart; Law Offices of Choi & Associates and Edward W. Choi for Plaintiff and Respondent.

1

THE COURT:

The opinion in the above-entitled matter filed on March 25, 2025, was not certified for publication in the Official Reports.  For good cause, it now appears that the opinion should be published in the Official Reports and it is so ordered.


BY THE COURT:


_____\s\_____
HULL, Acting P. J.


_____\s\_____
RENNER, J.


_____\s\_____
KRAUSE, J.